JAMES D. BECKETT *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed October 24, 1905—Rehearing denied Dec. 6, 1905.*

1. SPECIAL ASSESSMENTS—*when uncertainty of the term "flat stones" is removed.* In the absence of evidence to the contrary, proof that the term "flat stones," used in an ordinance in describing the material for bedding the curb-stones, is understood by contractors in general to mean limestone blocks about six inches thick and twelve to sixteen inches square, as nearly uniform as can be obtained, removes the uncertainty of the term.

2. SAME—*objections to description not raised on first appeal are waived.* Objections to the sufficiency of the description of an improvement in the ordinance, which existed at the time the original judgment of confirmation was appealed from but which were not raised upon that appeal, are waived, and cannot be raised on subsequent appeal.

3. SAME—*fact that the improvement was not constructed as required by ordinance does not affect validity of ordinance.* The fact that an improvement is not constructed in accordance with the requirements of the terms of the ordinance has no bearing upon the determination of the question whether or not the ordinance is valid upon its face.

4. SAME—*when assessment roll is conclusive upon question of apportionment of cost.* Under section 24 of article 9 of the City and Village act of 1872, in an assessment proceeding governed by that act, the assessment roll, as made up by the commissioners, is conclusive of the question of the apportionment of the cost between the public and the property assessed, and the county court does not err in refusing to hear testimony on that question.

APPEAL from the County Court of Cook county; the Hon. W. H. HINEBAUGH, Judge, presiding.

This is a special assessment proceeding, in which judgment of confirmation was entered on May 3, 1905, from which the present appeal is prosecuted. The special assessment was for paving Ogden avenue from Warren avenue to West Twelfth street.

218—7

GEORGE W. WILBUR, for appellants.

WILLIAM M. PINDELL, (EDGAR B. TOLMAN, Corporation Counsel, and ROB'T REDFIELD, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This case has been before this court three times, as may be seen by reference to *Holden* v. *City of Chicago,* 185 Ill. 526, *City of Chicago* v. *Holden,* 194 id. 213, and *Holden* v. *City of Chicago,* 212 id. 289. In the first case, which was brought here by writ of error, the judgment was reversed upon the ground that the ordinance failed to state the nature, character, locality and description of the improvement with sufficient certainty, as required in *Lusk* v. *City of Chicago,* 176 Ill. 207; that is to say, upon the ground that the flat stones, upon which the curb-stones of the roadway were to be bedded, were not described in the ordinance, either as to the kind or size or shape of such flat stones. In the second case, the judgment was reversed because, when the cause came on for trial in the county court after being re-docketed, the city offered to prove that the term, "flat stones," as used in the ordinance, had a definite well known and established meaning in the city of Chicago with reference to street improvements, but the court refused to permit the proof to be made; and it was there said that the object of the proof was to show that the term, "flat stones," was not, in view of the alleged local meaning in which it is claimed to have been used in the ordinance, indefinite or uncertain as a matter of description, and that, if proof of this character could have been produced by the petitioner, it should have been received by the court, and that the exclusion of it was error. (*Kuester* v. *City of Chicago,* 187 Ill. 21). When the case went back, and was again re-docketed, a new assessment was made under sections 57 and 58 of the Local Improvement act, and the city failed to adduce any proof to cure the

uncertain description in the ordinance, but judgment was rendered by the county court, affirming the new special assessment to pay an alleged deficiency for the paving of a part of Ogden avenue in Chicago; and such judgment of the county court was reversed chiefly because of the making of the levy of the new assessment.

In the third case of *Holden* v. *City of Chicago,* 212 Ill. 289, speaking of the second judgment remanding the cause in the second case of *City of Chicago* v. *Holden,* 194 Ill. 213, we said (p. 291): "The judgment of this court remanding the cause was not a final judgment disposing of the cause, or holding that the assessment was annulled or set aside, or that the ordinance was so insufficient that the collection of the assessment made under it was impossible, but, on the contrary, it was said that, if the proof, which it was proposed by the city to make upon the second hearing, that the term, 'flat stones,' had a well known and commercial meaning among people engaged in the business of constructing such improvements, could be made, it was not only possible, but entirely proper, that the assessment should be sustained, and to determine that question the cause was remanded." Since the remandment of the cause by the decision in *Holden* v. *City of Chicago,* 212 Ill. 289, it has been re-docketed and re-tried. The present appeal is prosecuted from the judgment rendered on such re-trial. Before the trial in the court below resulting in the judgment of May 3, 1905, the petitioner, the city of Chicago, dismissed the supplemental petition, upon which the new assessment proceeding, referred to in the last named case, was based.

*First*—Under the decision in *Holden* v. *City of Chicago,* 212 Ill. 289, it would seem that the only question here to be determined is, whether or not the term, "flat stones," as used in the original ordinance passed by the city council of Chicago on May 25, 1896, had a well known and commercial meaning among people engaged in the business of constructing such improvements as are here involved. Upon this

question proof was introduced by the present appellee, the city of Chicago, for the purpose of showing that the term, "flat stones," as used in the city ordinance, had a definite, well known and established meaning in the city of Chicago with reference to street improvements.

The ordinance of May 25, 1896, upon which the present proceeding is based, is for the improvement of Ogden avenue from Warren avenue to West Twelfth street, and provides as follows: "The curb walls now in place on either side of said roadway between said points to be plastered on their street face from the top surface down and for a space of five feet. * * * The curb-stones now in place on either side of said roadway shall be re-set, so as to be on a line with the street face of said curb walls; the spaces on either side of said roadway, where no curb walls or curb-stones exist, shall be curbed with the best quality of lime-stone curb-stones. Said curb-stones to be four feet long, three feet deep, and five inches in thickness with top edge full and square. Each curb-stone to have a straight base the whole length, and to be firmly bedded upon flat stones. Each curb-stone to be bush-hammered on the top surface and for a space of twelve inches down from the top." If the proof introduced shows that the descriptive term, "flat stones," used in the ordinance, has a well known and established meaning, the apparent defect in the description in the ordinance will be removed. (*Kuester* v. *City of Chicago,* 187 Ill. 21). The nature of that defect is thus stated in *Lusk* v. *City of Chicago, supra:* "It is not mentioned in the ordinance here what kind of stones the flat stones shall be, upon which the curb-stones are to be bedded. Whether they are to be granite, sandstone, limestone or of some other quality is not disclosed by the ordinance, nor is there any specification of the size or shape, except that they are to be flat and machine dressed. No intelligent estimate could be made by the commissioners of the cost of the stones, unless the length, width, thickness and kind or quality were dis-

closed by the ordinance. * * * As to the flat stones, nothing is said in regard to their nature or character."

We are of the opinion that the proof, introduced by the appellee upon the last trial of the cause, was sufficient to remove the defect in question under the decisions already referred to. The testimony, so introduced, showed that the term, "flat stones," has a well known and commercial meaning among people engaged in the business of constructing street improvements; that such stones are flat blocks of stone, used as supports for curb-stones, which are set upon the streets in Chicago; that these blocks are limestone, about six inches thick, and fifteen inches square, that is to say, fifteen inches on each side; or, as one of the witnesses expresses it, "six inches thick—supposed to be always about that,—stone running six inches thick and fifteen by fifteen; the quality of the stone is limestone; they come as near being uniform as we can get them." One of the witnesses, giving the thickness as six inches, states that they would sometimes be twelve or sixteen inches square, instead of fifteen inches square. But this difference does not weaken the force of the testimony as to the meaning of the term used. One witness says of these flat blocks of stone: "They are known as flat stones for this purpose in connection with curbing; * * * the term, 'flat stones,' is a well known term in connection with the business of setting stone curbing. * * * In the paving business and particularly in the stone curbing business these flat stones are well known." No testimony whatever was introduced by the appellants upon the trial below to contradict that of the city upon this question.

*Second*—It is furthermore contended, on the part of the appellants, that the ordinance is defective, because it does not give the height of the curb-stones. This point cannot be raised at this time, as it was not presented when the case was before the court before. In *Lusk* v. *City of Chicago,* 211 Ill. 183, it was held that, upon the reversal of a judgment of confirmation upon the ground of insufficient description

of the improvement, new objections, which existed when the assessment was confirmed, cannot be urged to the validity of the ordinance when the cause is re-docketed, nothing having been done in the meantime to call for new objections; and in that case it was said (p. 188) : "The original appeal to this court was upon the ground that the original ordinance of 1893 was invalid. The ground, upon which it was then attacked, was that it did not sufficiently describe the 'flat stones,' and it is now insisted that, upon the remanding and re-docketing of the cause, appellants were entitled to further attack the validity of the same original ordinance which, upon the other appeal, this court had passed upon. We think not. It is a well settled rule that, when a cause is litigated and that litigation prosecuted to a court of appeals and passed upon, all questions that were open to consideration and could have been presented, relating to the same subject matter, are *res judicata,* whether they were presented or not. In other words, and as applied to the case at bar, the validity of the original ordinance of 1893 was attacked upon the first appeal upon the ground that it did not sufficiently describe the improvement. When the cause was re-docketed, the validity of the same ordinance was attacked upon another ground. This, we think, cannot be done."

*Third*—One of the witnesses of appellee, upon the trial below, stated upon cross-examination that these flat stones were "placed, one under each end of the curb,—never put in more than one under each end; I have constructed the curb on Ogden avenue; under the curb-stones on Ogden avenue I did not put a continuous line of these bedding stones from one end of the curb to the other, and never saw any bedding stones used in that way." In *White & Gleason* v. *City of Chicago,* 188 Ill. 392, where the description in the ordinance of the foundation, upon which the curb-stones were to rest, was claimed to be so indefinite that the ordinance was void, it was said : "The ordinance provides each

curb-stone shall be four feet long, three feet high, and five inches thick, shall have a straight base its whole length, and shall be 'firmly bedded' upon flat limestone blocks, said blocks to be one foot in length, eight inches in width, and six inches in thickness.   It is urged that the number of limestone blocks, necessary to be used in order the said curb-stones may so be 'firmly bedded,' is not given.   Our construction of the ordinance is, that it requires that the base of each curb-stone, along the full length thereof, shall rest and be bedded on limestone blocks of the dimensions specified.   Supporting the curb-stone on such limestone blocks placed at the ends, only, of the curb-stone, or at the ends and center only, or otherwise in such manner as that all parts of the base of each curb-stone would not be bedded on such limestone blocks, would not answer the requirements of the ordinance.   It was not necessary the number of limestone blocks to be used should be given.   The dimensions of the limestone blocks and the length of the curbing being known, the number of blocks to be used was but a matter of arithmetical calculation."   It is said that, under the proof here, each curb-stone is supported at the ends only, and not by a continuous line of bedding stones, and that, therefore, under the decision in *White & Gleason* v. *City of Chicago, supra,* the ordinance here is defective.   The ordinance here, as in the case referred to, is silent as to the number of flat stones or bedding stones.   If it is to be interpreted as requiring a continuous line of flat stones under the curbs, instead of one at each end of each curb, the proof merely shows that, in the improvement now under consideration, as many flat stones were not put under the curb-stones as a correct interpretation of the language of the ordinance would require. The question, however, is not as to what was done under the terms of the ordinance, but whether the ordinance itself is invalid in not specifying the number of flat stones required. The present ordinance is not defective for the reason thus urged against it, even if such defect can be considered at

this time or upon this hearing. The fact, that an improvement is not made in accordance with the requirements of an ordinance, has no effect upon the determination of the question whether the ordinance itself is valid or not upon its face. If it be admitted that the ordinance here requires a continuous line of flat stones under the curbing, instead of one flat stone at each end of each curb, the proof shows that a less number of flat stones were put in than the ordinance required, and, this being so, the property owner is compelled to pay for a fewer number of flat stones than he would have been obliged to pay for if the ordinance had been strictly complied with. Appellants, therefore, cannot complain that they are injured in any way. It may be said, however, of the point thus made, as is said above in regard to the point that the height of the curb was not specified, that it cannot be raised at this time. ( *Lusk* v. *City of Chicago,* 211 Ill. 183).

*Fourth*—Appellants furthermore complain that they were not permitted to introduce proof to show the amount of public benefits. The assessment roll, introduced in evidence, showed the proportion of the total cost of the improvement, which would be a benefit to the public, and assessed to the city of Chicago, to be "no dollars," the total cost of the improvement being $74,500.00. Appellants proposed to prove that the public benefit, instead of being "no dollars," was really about fifty per cent of the total amount of the assessment. We are of the opinion that the court committed no error in refusing to allow testimony upon this subject, for the reason that the assessment roll in this case was conclusive upon this question.

Section 47 of the Local Improvement act of June 14, 1897, provides that "upon objection or motion for that purpose, the court, in which said proceeding is pending, may in a summary way inquire * * * whether or not the assessment, as made and returned, is an equitable and just distribution of the cost of said improvement, first, between the

public and the property; and second, among the parcels of property assessed." (4 Starr & Curt. Ann. Stat.—sup. ed. —p. 179). In *Mercy Hospital* v. *City of Chicago,* 187 Ill. 400, in construing section 47, we held that the action of the county court in refusing to inquire into the apportionment of costs between the city and private owners is subject to review, although said section 47 provides that the county court's determination of the correctness of such apportion- ment shall be conclusive; and, in that case, substantially overruled *City of Jacksonville* v. *Hamill,* 178 Ill. 235, where it was decided that the court had no power to modify or change the assessment in this respect, as made and returned by the proper officers. But the *Hamill case, supra,* was only overruled, so far as it concerned section 47 of the Improve- ment act of 1897, as applied to special assessment proceed-- ings, instead of special taxation proceedings. In construing paragraph 139 of chapter 24 of the Revised Statutes, being section 24 of article 9 of the City and Village act of 1872, this court held, in a number of cases, that the action of the commissioners was conclusive, in so far as it fixed the rela- tive amount of the cost of the improvement that was to be respectively borne by the municipality and the owners of the property benefited. (*City of Sterling* v. *Galt,* 117 Ill. 11; *Billings* v. *City of Chicago,* 167 id. 337). In *Billings* v. *City of Chicago, supra,* we said (p. 342): "This court has held in a number of cases, that, where the commissioners have acted and made their report, as was done here, their finding is conclusive in so far as it fixes the relative amount of the cost of the improvement, that is to be respectively borne by the municipality and the owners of the property benefited.— *Bigelow* v. *City of Chicago,* 90 Ill. 49; *City of Sterling* v. *Galt,* 117 id. 11; *Walters* v. *Town of Lake,* 129 id. 23." In *Mercy Hospital* v. *City of Chicago, supra,* it was held that the decision in *City of Jacksonville* v. *Hamill, supra,* was wrong in applying the construction thus given to para- graph 139 of said chapter 24 to section 47 of the Local Im-

provement act of 1897. But the decisions, to the effect that the finding of the commissioners is conclusive in so far as it fixes the relative amount of the cost of the improvement that is to be respectively borne by the municipality and the owners of the property benefited, still stand as correct interpretations of paragraph 139 of chapter 24 of the City and Village act of 1872, and apply to proceedings had under and in pursuance of the act of 1872.

Section 99 of the Local Improvement act of 1897 provides "that the laws subsisting at the time of the taking effect of the Local Improvement act of June 14, 1897, shall continue to apply to all proceedings for the * * * confirmation of special assessments, * * * for local improvements which were pending in any court in this State at the time of the taking effect of the Local Improvement act of June 14, 1897;" and it also provides that, "where proceedings for local improvements to be made by * * * special assessment shall have been instituted when this act shall take effect, and where the assessment provided for therein has not been confirmed by any court, all future proceedings thereunder shall be as herein provided, with the same effect as if such proceedings had been commenced in accordance with the provisions herein provided," etc. (4 Starr & Curt. Ann. Stat.—sup. ed.—p. 203; *Gray v. Town of Cicero,* 177 Ill. 459; *City of Chicago* v. *Nicholes,* 192 id. 489; *Yaggy* v. *City of Chicago,* 194 id. 88; *Markley* v. *City of Chicago,* 190 id. 276; *Gage* v. *City of Chicago,* 195 id. 490). The ordinance, upon which the present proceeding is based, was passed on May 25, 1896. The petition in the original proceeding herein was filed on July 25, 1896, and the assessment roll herein was filed on September 4, 1896. Therefore, this proceeding was pending when the act of 1897 went into force on July 1, 1897. It must also be true that the original judgment of confirmation, entered in this proceeding, was so entered before July 1, 1897, when the Local Improvement act went into force. When the clerk made

up the record in the case at bar, he did not make a full record of all the proceedings, but only inserted certain proceedings and orders named in the *præcipe* of counsel. He did not insert in the record such original confirmation judgment. There is, however, inserted in the record an order, entered on July 2, 1897, the day after the Local Improvement act went into force, reducing the assessment twenty per cent as to certain property. This order contains the following words: "It is considered and ordered by the court that the judgment of confirmation, heretofore rendered herein, as to and in so far as the same affects the lots, pieces and parcels of land and property hereinafter described, be, and the same is hereby vacated," etc. In this order of July 2, 1897, there is a reference to "the judgment of confirmation heretofore rendered herein." There was, therefore, a judgment of confirmation entered therein before July 2, 1897. The affidavits in regard to the mailing and posting of notices, and the certificate of publication, are in the record, and were filed in the proceeding on September 21, 1896. These affidavits and notices show that the final hearing for the confirmation of the assessment was had at the September term, 1896, of the county court, commencing on September 14, 1896. The presumption is, that the judgment of confirmation was entered at the September term, 1896; at any rate, it is clear that it was entered before the Local Improvement act went into force on July 1, 1897. Therefore, as this proceeding was pending on July 1, 1897, and as the judgment of confirmation herein had been entered before July 1, 1897, the present proceeding, so far as it has reference to the action of the commissioners in the respect above named, is governed by the act of 1872, and not by the act of 1897. Consequently, the assessment roll in this case, which found that the proportion of the total cost of the improvement, which would be of benefit to the public, and assessed to the city, was "no dollars," is conclusive upon that subject. That assessment roll having been filed and confirmed in 1896, the

finding of the commissioners, who made the same, "is conclusive in so far as it fixes the relative amount of the cost of the improvement that is to be respectively borne by the municipality and the owners of the property benefited." (*Billings* v. *City of Chicago, supra*).

Inasmuch, therefore, as section 47·of the Local Improvement act of 1897 has no application here, and inasmuch as the act of 1872 upon the point here involved is the act, which does have application, the court below committed no error in refusing to allow the appellants to prove that the public benefit was other or different from what it was found to be in the report, or assessment roll, of the commissioners, as filed in 1896.

The judgment of the county court is affirmed.

*Judgment affirmed.*